Lewis Gordon on behalf of the petitioner Oliur Rahman Rubel, a native of Bangladesh who seeks asylum from that country. This appeal involves two separate Board of Immigration Appeals decisions, an underlying appeal from the denial of the immigration judge and a subsequent appeal after a remand from this court. I want to address the motion to remand first because I believe that it will resolve a lot of problems in this case. The Board of Immigration Appeals in its second decision said that the evidence which was submitted was cumulative and not previously available, that some of it predates the hearing of Mr. Rubel. Now, I note that the prior evidence which was submitted included only a 2013 State Department report and the Department of Homeland Security's exhibit list at pages 402 to 403 in the record. And if we look at that exhibit list, there's only two articles in there from 2014. Most of those articles are from many years earlier. And those articles were submitted as part of the Department of Homeland Security's failed attempt to prove that the BNP, the party of Mr. Rubel, was a terrorist organization. There is only one article there that postdates the 2014 election, which was the cause of Mr. Rubel's problems. So the evidence which was submitted cannot be cumulative. Well, didn't the BIA say more than that? It said the evidence has to be evidence that was not previously available or presented at the prior hearing. And he, the BIA, says to the extent that much of the Respondent's evidence on appeal predates his hearing, he did not establish that it was new or previously unavailable. That's different than saying that it was merely cumulative. What's your response to that part of the BIA's order? So the Respondent was pro se in the Adelanto Detention Center. It's two and a half hours from Los Angeles in the high desert. The Respondent does not speak English. If we look at the asylum application that was prepared for him by a nonprofit organization that visits the detention center, we can see that that application isn't very extensive, and no documentation was submitted on his behalf. He kept asking for continuances, and he wanted a continuance. The immigration judge went forward. So when we say previously unavailable, I think it's very hard for him to get that evidence. And also, a good portion of the evidence is evidence which occurs just before his hearing. And there is evidence in this. I want to make sure I get this sequence straight in my mind. It may have been unavailable, evidence may have been unavailable to him because he just couldn't get it. But isn't all the evidence that was submitted in conjunction with the remand application relate to things that happened before his hearing? No, there's some evidence, I believe, in there. There's an article from June 27, 2015, at page 178 in the record, which talks about activists of the BNP having to protect themselves and save their lives. That article was written after the hearing? It was published after the hearing. I'm not sure how it can be said that the BIA abused its discretion. Well, I would argue, Your Honor, that at page 27, in the brief, there is a request for remand. In your brief to us? In the brief, there is a mention of remand. It's not an extensive reference, but there is a reference. Did you ask the BIA to remand to the IJ? I believe that the counsel who had filed the... I mean you collectively, obviously. It wasn't you. Yes. The board construed it as a remand, which once they construed it as a remand... No, it was a remand to them. Did you ask them to remand the case to the IJ or to reopen? I don't believe so. I don't have that at my fingertips. Let's look at the decision, and I guess I'd like to ask you if you can point me to anywhere that you think is most beneficial to your client in the record. To whatever you think that would require us to say that this case would be remanded. It just compels the finding that Mr. Rubel testified credibly. Because I reviewed his testimony. It seems to me that it's just very difficult to draw conclusions one way or the other from it. If that's true, I'm just struggling to figure out how we don't give deference to the IJ. Okay. So I will go through a list of all the credibility issues that I think the IJ is wrong on, or at least the most important ones, because I see my time is winding down. The immigration judge says that the 2014 election, since the Alamy party was in the lead, also elected in 2008, how could it be a problem if they were elected again in 2014? It appears that under the parliamentary system, the party was mad at Mr. Rubel because they were not able to get an electoral mandate. And there is an article in the remand evidence that discusses that. But the IJ concludes, after listening to Mr. Rubel's testimony, which I must admit on reading is quite confused, that I don't think you've credibly established that you were persecuted or would be persecuted because of your political beliefs. It's essentially a I don't believe you finding. Why is that not supported by substantial evidence? He may have made a mistake here and there in terms of history, but he basically says, I don't believe your story. Don't we review that rather charitably? So under Jabril v. Gonzalez, this Court has held that when the IJ finds a person who is a supporter of the IJ, there is an implausibility based solely on conjecture and speculation. The testimony, though, uncontroverted by the IJ, it shouldn't be accorded deference. And my question was a little different, and I'm sorry if I misled you with it. He said, for example, I don't think you've established to my satisfaction that you're a member of the party that you say was discriminated against. You haven't, I don't, you haven't established that, and therefore you haven't met the first requirement for persecution. Can we find that to be not supported? How do we review that? So if you note that in page 155 in the record, Mr. Rubel says that I submitted a BNP party document at the bond hearing. Now, of course, bond hearings are not part of this record. But how is Mr. Rubel, who's pro se in this hearing, supposed to understand that? And the IJ never went and looked at that. Is that document in the record for us? It's not in your record, but the testimony that he submitted it there was, and he's pro se. Well, I have to say, I have some serious concerns with the quality of representation your colleague provided this client, both in the proceedings below and in the brief that was filed. I realize you came on late, but I'm just trying to figure out if you have any explanation for that. I'm particularly concerned about it, because there were legitimate problems in the proceedings below that the attorney just missed. At a minimum, the obvious poor quality of translation Mr. Rubel received in his hearing, the fact that the IJ made adverse credibility findings without giving Mr. Rubel an opportunity to explain the alleged discrepancies, but none of that was raised, which is troubling. I don't have an answer for that, Your Honor. All I can say is that I would be willing to consider it. I would do additional briefing. You do have the option, I suppose, of going back to the BIA and arguing ineffective assistance of counsel in a collateral attack on this. Do you not? That would be possible, Your Honor. Thank you. I'll give you just a minute or so for rebuttal. May it please the Court. I'm Brett Kinney on behalf of the Attorney General. As an initial matter, to respond to the petitioner's argument that the evidence he submitted was not cumulative, the argument was not made in the opening brief to this Court, and this Court should deem it waived. But even if it does not, the argument still lacks merit, because the immigration or, excuse me, the Board of Immigration Appeals found that the evidence submitted for the first time on administrative appeal was cumulative of that submitted to the agency, meaning that the evidence presented the same information, that Bangladesh does experience political violence. Let me ask you, and I want to follow up on Judge McGeeh's question. This is a troublesome record. The petitioner was unrepresented at some points, and he was effectively unrepresented, I think, until oral argument today. There are just no, the record's terrible, the translation seems terrible, but nobody attacked it. I'm not sure how good the judge's credibility determinations are, but those don't seem to have been attacked on appeal. And then he comes back with some additional evidence which may or may not be cumulative. What do we do with a case like this? I'm less troubled by the outcome than by the process. What do we do with a case that seems to have all these problems with it? I don't seem to pretty much do anything, because those arguments were about the adverse credibility determination, possible translation problems. If I could ask you, because you said possible translation problems. You're very familiar with the record, I'm sure. Do you think Mr. Rubel received adequate translation services in the proceedings below? I can't speak to the adequacy of the translation, because he does not and did not point to any specific issues. No, sure you can, because you've read the transcript. It does seem, as this Court has noted, difficult to follow the testimony, but we can't determine on appeal whether that's due to Mr. Rubel's own lack of. Well, it seems pretty consistent throughout the hearing. And I'm just curious, can't we grant the petition on that basis on our own? It seems impossible to understand what's going on in his testimony, because the translation is so bad. And it's obvious from the record that the IJ couldn't understand him either. And the IJ says as such in a few places in the record. So I'm also trying to figure out how can that be fair and how can that be just? Well, to respond, Your Honor, this Court, our first response would be that this Court would lack jurisdiction to do that, because this Court may only consider issues that were exhausted before the Board of Immigration Appeals. The petitioner could have argued to the Board that there were significant translation problems. And my second response is that that is the role of the immigration judge, is to determine whether seeming implausibilities and inconsistencies and a lack of responsiveness are due to translation problems or, in this case, to credibility. And the immigration judge is in the best position to make that determination. And if the immigration judge, and I'm not saying this is that exact scenario, just completely goes off the rails and says just incredible things that are clearly not supported. If that's not brought up and, you know, the record is such, there's just nothing that can be done. In that case, the petitioner should raise those arguments to the Board of Immigration Appeals, which would then be given the responsibility to the BIA. But that same lawyer who let that happen below would be responsible to raising it for the BIA. Correct, Your Honor. And as Your Honor noted, any remedy could possibly be a motion to reopen before the Board alleging ineffective assistance of counsel. And so there's no role for this Court to provide that type of remedy for the petitioner who has not made it himself. I understand the finding based on lack of credibility. I understand the reasoning. I'm having a more difficult time with the threat of future persecution finding. No past persecution, no presumption. Now we get to has he established a threat of future persecution. Does the BIA reject that because they find him not credible, because they're upholding the credibility finding? Or do they assume that he's credible and still reject it? My reading of the decision is that they assumed that he was credible, like the immigration judge did, and then rejected it. In that front, if there were, as he claimed, 10 death threats or these death threats to his brother from people who said, we can't get you, so we're going to get your brother, why doesn't that establish a reasonable fear of future persecution? I understand if you find him not credible, then you don't take those into account. But I'm having some difficulty at the second level, the assuming him to be credible, why that wouldn't be substantial evidence that supported the claim of fear of future persecution. It might be relevant to any such determination. None of it is relevant. If you assume that his brother was threatened with death in his absence, because they wanted to kill him but couldn't kill him, doesn't that sort of compel the conclusion that he ought to fear return to Bangladesh? My understanding is that the petitioner's brother was beat up, and then they told him that we're going to get your brother. So why doesn't that compel the conclusion that he would have a reasonable fear of return? For the same reason that he didn't have a fear, he didn't experience past persecution, because threats alone are not enough. But when the threat is accompanied by violence, and the victim is told that it's the intent of those who are threatening to do the same to somebody else, don't we move up an extra step? Perhaps, Your Honor, but in this case, the harm was directed at the petitioner's brother, who had a single incident of physical harm, and this Court has case law that a single incident of physical harm, even coupled with threats, does not rise to the level of persecution. Of past? Of past persecution. Do our cases deal with whether or not that's enough to establish a reasonable fear of future persecution? If it doesn't rise to the level of persecution, either past or future persecution, then it would still be the same analysis. It has to meet the threshold to constitute persecution. I guess what I'm asking is whether or not you think the BIA's finding on that issue is independent of its affirming of the credibility determination of the IJ. Yes, that's my understanding, Your Honor. But notably, the petitioner did not argue to the Board and does not argue on appeal to this Court anything regarding the agency's well-founded fear of analysis. I understand that, and that's why I'm exploring it. I'm trying to figure out what happened here. Correct, Your Honor. Can you tell me where in Rubel's testimony he says they stopped calling his mobile phone? Because I looked at something that you argue, and I've looked, and the best I can find is something equivocal about the Awami League calling him at his uncle's house. But I don't see anything definitive, but maybe there's something in the record that wasn't part of our record. I believe on pages 373 to 375 of the administrative record, he testified that after February 21st, the callers were not able to get him, so they called his mother nine times. And he also later testified that February 21st was the date when he went into hiding at his uncle's house. I still don't understand. I mean, because they stopped calling his mobile phone. They called him at his mother's house, but that doesn't mean they stopped calling his mobile phone. My understanding is that they called his mother and told her that they were not able to find the petitioner. And so that they were looking for him, and that they also then called him at his uncle's house. Right. But it seems like being called at your uncle's house doesn't mean that you received a call on your uncle's landline. It could also mean that you received a call while physically present at your uncle's house. Correct, Your Honor, and that's the inconsistency is that he testified. How is that inconsistent when he says they kept calling him on his mobile phone? I'm trying to understand that. Right, because he also testified that they could no longer get a hold of him. On page 365 of the administrative record, he said they would call me over the phone and tell me that we know where you are and we are going to come and attack you, even kill you there. And that's inconsistent with his testimony, that they stopped calling him and that they did not know where he was, and that they would call his mother asking for his whereabouts. If it was the same, as he testified, it was the same individuals, and they would call his mother asking for his whereabouts, and then to still call him and tell him we know where you are is directly inconsistent. Where in the record, I guess, did the IJ give Mr. Rubel the opportunity to explain the perceived inconsistencies in his testimony? I don't believe the immigration judge ever pointed out that specific inconsistency, but both the immigration judge and the DHS attorney asked the petitioner about his story and asked multiple follow-ups, which provided him an opportunity to explain his testimony, which is sufficient under this Court's case. Which case law is that? Because I thought the IJ had to give him an opportunity, at least the case law that I'm most familiar with, to explain the perceived inconsistencies in his testimony. Correct, Your Honor, and this Court has said that that opportunity may come through questioning and from questioning from the DHS attorney. And where did that happen here? In this case, all throughout, the immigration judge and DHS attorney both asked him numerous questions to clarify points of his testimony, and that provides a sufficient opportunity for an explanation. But in any event, he never raised any argument to the Board or to this Court that he lacked a sufficient opportunity to explain the inconsistencies, and so this Court lacks jurisdiction to consider that issue because it is not exhausted. How specific does the petitioner have to be in making these kinds of requests to preserve the issue? I mean, for example, I know in the persecution argument you said that Rubell had waived his argument about having a well-founded fear of future persecution because he hadn't specifically argued that on his appeal to the BIA. Does he have to be that specific? I mean, he clearly raised the issue of past persecution and generally well-founded fear of persecution. Yes, Your Honor, under this Court's case law, he had to be specific enough to put the Board on notice that he was raising the issue. But the Board dealt with that issue, did they not? It did. I don't understand how there can be waiver if the Board didn't treat it as waiver. The Board said, I want to deal with your persecution claim. You didn't establish a past persecution, you haven't established a well-founded fear of future persecution, both because we uphold the credibility finding, and even if we assumed you to be credible, it wouldn't establish the well-founded fear. So I don't understand how we have waiver under those circumstances. In this case, the well-founded fear issue would be exhausted because the Board did address it. So you're arguing that he didn't raise it to us sufficiently? Correct, Your Honor, yes. And look, again, I make no, I'm not arguing that the brief here is a model of appellate draftsmanship, but there's at least a heading that said the petitioner testified credibly in the IJ hearing, concluding that unfulfilled threats to the petitioner would not constitute too past persecution. I have no idea what that means. And does not have a well-founded fear of future persecution. Then there's two pages of pretty bad argument that follow it, but isn't that enough to preserve it in front of us? Respectfully, no, Your Honor, because it's not developed in any argumentation and not supported by citations to authority or the record as required by Rule 28 of the Rules of Appellate Procedure and this Court's case law. Unless there are any other questions, thank you very much. Thank you, Your Honor. I'll give you a couple more minutes for rebuttal. So, regarding the exhaustion issue, as I had cited in the 28-J letter that I sent in, under Diaz-Jimenez v. Sessions that this Court decided this year, exhaustion doctrine doesn't have to be employed in a formalistic manner. On page 27 in the brief to the... The question is, do the arguments in the brief to us address the issue sufficiently? They list a bunch of cases and they say a bunch of things, but what's the argument? That it's sufficiently made, and I agree, it's not the greatest brief that was written, but it's at least expressed there in the well-founded fear. And I want to raise another issue that this Court can look at, even if under manifest injustice this Court could look at these issues and remand back. And at the end of the day, Mr. Rubel was a pro se applicant, and he wasn't able to get the evidence, and there's a lot of issues where the IJ makes credibility findings based on conjecture. And he did submit evidence on appeal that talks about the harm to BNP activists, and he did submit his BNP party card. So overall, this case could be sent back for him to have another hearing where he could be represented by counsel. Thank you. Thank you very much.
judges: Murguia, Hurwitz, Staton